**Karlos ARGIZ, Plaintiff-Appellant,**

v.

**UNITED STATES IMMIGRATION, Defendant-Appellee.**

No. 81–2664.

United States Court of Appeals, Seventh Circuit.*

Submitted March 31, 1983.

Decided April 7, 1983.

---

\* After preliminary examination of the briefs, the Court notified the parties that it had tentatively

Karlos Argiz, pro se.

Melvin K. Washington, Milwaukee, Wis., for defendant-appellee.

Before PELL, BAUER and WOOD, Circuit Judges.

PER CURIAM.

This is an appeal from a final judgment granting petitioner-appellant habeas corpus relief pursuant to 8 U.S.C. § 1252(a). Appellant seeks review of the district court's holding that he was not entitled to invoke the Interstate Agreement on Detainers or the Federal Speedy Trial Act in his pursuit of a speedy deportation hearing. We affirm.

I

Appellant Karlos Argiz, a native of El Salvador, was convicted in Douglas County Circuit Court on April 26, 1979 of robbery in violation of Wis.Stats. § 943.32(1)(b). He was sentenced to a six-year term of imprisonment, and incarcerated at the Waupun Correctional Institution. Appellee, the United States Immigration and Naturalization Service, thereafter filed with the institution and against appellant an Order to Show Cause and Warrant for Arrest of Alien. The document provided that appellant would be notified of the date, place, and time at which he was to appear before a special inquiry officer to show cause why he should not be deported. The document contained the following allegations:

(1) that appellant is not a citizen or national of the United States;

(2) that appellant is a native and citizen of El Salvador;

(3) that appellant entered the United States at San Ysidro, California on July 30, 1978;

(4) that at the time of entry, appellant falsely represented himself to be a citizen of the United States;

(5) that appellant was not a United States citizen;

concluded that oral argument would not be helpful to the Court in this case. The notice provided that any party might file a "Statement as to Need for Oral Argument." *See* Rule 34(a), Fed.R.App.P.; Circuit Rule 14(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

(6) that on February 6, 1976, and again on April 13, 1978, appellant had been arrested and deported from the United States; and

(7) that appellant had not received permission to apply or reapply for subsequent admission to the United States.

On the basis of these allegations, it was charged that appellant is subject to deportation pursuant to § 241(a)(1) of the Immigration and Nationality Act in that at the time of entry, he was within a class of aliens excludable by law, to wit, those aliens who have been arrested and deported previously and have not received permission to apply or reapply for admission pursuant to § 212(a)(17) of the Act. 8 U.S.C. §§ 1251(a)(1), 1182(a)(17).

The accompanying notice to the warden stated that an investigation had been instituted to determine whether appellant is subject to deportation, and contained requests that he accept the notice as a detainer, serve the Order to Show Cause upon appellant, and notify the INS at least 30 days prior to appellant's release in order that a decision could be made as to whether appellant would be placed under deportation proceedings.

Appellant sent to appellee a request for a speedy trial pursuant to Article III(a), § 2, of the Interstate Agreement on Detainers. 18 U.S.C. Appendix. This request was denied on the ground that the notice of deportation proceedings was not an "untried indictment, information, or complaint" within the meaning of Article III(a), § 2 of the Agreement.

Appellant then filed in district court a motion for speedy trial pursuant to 18 U.S.C. § 3161; this request was accompanied by allegations that the detainer had adversely affected his rehabilitation program in a number of specific ways. Leave to proceed in forma pauperis was granted. In an order dated February 19, 1980, the district court construed the motion as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, and stated the issue to be whether the INS notice of pending deportation proceedings is a detainer within the meaning of the Interstate Agreement. Noting that the issue was one of first impression, the court appointed counsel to represent appellant, deferred ruling on the petition, and established a briefing schedule.

In a decision and order dated September 14, 1981, the district court declared it had erred in construing the motion as a petition for a writ of habeas corpus pursuant to § 2254 because appellant was not challenging a state court conviction underlying the detainer. The court ruled that appellant had stated no cognizable claim under 28 U.S.C. § 2255 because the INS notice of pending deportation proceedings did not implicate appellant's rights under the Sixth Amendment: as an administrative detainer based upon an alleged violation of a civil provision of the Immigration and Nationality Act, the INS detainer did not fall within the coverage of the Agreement or the Speedy Trial Act. The court did proceed to issue a writ of habeas corpus pursuant to 8 U.S.C. § 1252(a);[1] appellee was ordered to commence its deportation proceedings within 90 days or withdraw the detainer.[2]

1. Section 1252(a) provides, in pertinent part, that

"[p]ending a determination of deportability ..., [an] alien may, upon warrant of the Attorney General, be arrested and taken into custody ... Any court of competent jurisdiction shall have authority to review or revise any determination of the Attorney General concerning detention ... pending final decision of deportability upon a conclusive showing in habeas corpus proceedings that the Attorney General is not proceeding with such reasonable dispatch as may be warranted by the particular facts and circumstances

in the case of any alien to determine deportability."

2. On November 6, 1982, pursuant to the district court's order, the INS conducted a hearing at the institution; Argiz filed a request for political asylum, 8 U.S.C. § 1253(h), and the hearing was adjourned. Upon completion of his Wisconsin sentence on January 18, 1983, Argiz was released to the custody of the INS. On February 2, 1983, Argiz appeared before an INS inquiry officer, who denied his motion to stay further deportation proceedings pending the disposition of this appeal. On February 7, 1983, the INS inquiry officer denied Argiz's application for political asylum and ordered

## II

■ The issue presented by this case is whether appellant is entitled, under the Sixth Amendment, to a speedy deportation hearing. The district court held that the failure to provide appellant a speedy hearing on the deportation charge did not implicate his Sixth Amendment rights. We agree. Therefore, we hold that appellant has no remedy under either the Interstate Agreement on Detainers, 18 U.S.C. Appendix, or the Speedy Trial Act, 18 U.S.C. § 3161.

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, . . . ." The Interstate Agreement on Detainers and the Speedy Trial Act are statutory means for effectuating this right. The Agreement provides for the speedy disposition of detainers based upon "untried indictments, informations, or complaints." Although the Agreement itself does not define the term "detainer," it is defined in the legislative history as "a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." *See* Senate Report No. 91–1356, U.S.Code Cong. & Adm.News, 1970, Vol. 3 at 4864–65. The Agreement provides that the prosecuting officer and appropriate court in the receiving state shall be notified of the prisoner's request for a final disposition of the untried indictment, information, or complaint. 18 U.S.C. Appendix, § 2, Article III(a). The term "appropriate court" is defined as a court of the United States in which the indictment, information, or complaint, of which disposition is sought, is pending. 18 U.S.C. Appendix, § 4.

The bases for the INS charge underlying the detainer in the present case are 8 U.S.C. §§ 1251(a)(1) and 1182(a)(17). Under 8 U.S.C. § 1251(a)(1), an alien who, "at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of entry," can be deported. One such excludable class consists of "[a]liens who have been arrested and deported . . ., unless prior to their embarkation . . . the Attorney General has consented to their applying or reapplying for admission." 8 U.S.C. § 1182(a)(17).

It is clear that § 1251(a)(1) is a civil provision of the Immigration and Nationality Act; deportation proceedings consistently have been classified as civil rather than criminal proceedings. *See, e.g., Woodby v. Immigration & Naturalization Service,* 385 U.S. 276, 285, 87 S.Ct. 483, 487, 17 L.Ed.2d 362 (1966); *United States v. Anton,* 683 F.2d 1011, 1015 n. 6 (7th Cir.1982); *Chavez-Raya v. Immigration & Naturalization Service,* 519 F.2d 397, 400 (7th Cir.1975). Section 1251(a)(1) proceedings are conducted by a special inquiry officer of the INS, not by a court of the United States. 8 U.S.C. § 1252(b). The INS charge, therefore, cannot be classified as an "untried indictment, information, or complaint" within the meaning of the Agreement.[3]

For similar reasons, appellant has no claim under the Speedy Trial Act. Section 3161(a) sets forth the time limits within which a "defendant charged with an offense" must be brought to trial. The term

---

him deported from the United States. On February 15, 1983, Argiz filed notice of appeal to the Board of Immigration Appeals. On March 12, 1982, the INS filed with this Court a motion to dismiss this appeal as moot. If, as appellant argues, the INS detainer is within the purview of the Interstate Agreement, appellant might be entitled to dismissal of the underlying charge for the INS' failure to comply with the "speedy trial" provisions of the Agreement. Therefore, the appeal is not moot.

**3.** Appellant argues that the Agreement is applicable to this administrative detainer because he could be subjected to criminal penalties under 8 U.S.C. § 1326 for the conduct upon which the deportation proceeding is based. Section 1326, the criminal counterpart of § 1251(a)(1), provides that one who reenters the United States without the Attorney General's express consent after a previous arrest and deportation is guilty of a felony and may be subjected, upon conviction, to a two-year term of imprisonment and a fine of $1,000.00.

Because appellant has not been charged with violating § 1326, we need not decide whether he could invoke the Agreement to secure a speedy hearing on such a charge.

"offense" is defined as "any federal criminal offense which is in violation of any Act of Congress and is triable by any court established by Act of Congress . . . ." 18 U.S.C. § 3172(2).

### III

■ Appellant also argues that the district court's failure to enforce the strict time limitations set forth in 28 U.S.C. § 2243 for the filing of a response to an Order to Show Cause warrants dismissal of the charge underlying the detainer. The district court originally construed appellant's motion as a petition for a writ of habeas corpus pursuant to § 2254. In accordance with Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, briefing on the issues within a period of time fixed by the court was ordered. Rule 4, unlike § 2243, contains no fixed time requirement for the filing of an answer.

The district court's subsequent confession of error in construing the motion as a § 2254 petition does not alter our conclusion that appellant's position is tenuous. Assuming arguendo that the time limits of § 2243 govern petitions for writs of habeas corpus pursuant to 8 U.S.C. § 1252(a), appellant did not seek relief under that provision. Rather, he filed a motion for a speedy trial pursuant to 18 U.S.C. § 3161, which fairly could have been dismissed. The district court appears to have invoked *sua sponte* 8 U.S.C. § 1252(a) and granted relief. In any event, appellant cites, and we are aware of, no authority for the proposition that failure to comply with the time limits set forth in § 2243 warrants dismissal of the charge underlying a detainer.

### IV

■ Appellant also seeks to challenge the constitutionality of 8 U.S.C. § 1362, which provides that in deportation proceedings "the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel . . . as he shall choose." Appellant alleges that he stands accused of violating 8 U.S.C.

§ 1326, the criminal counterpart of 8 U.S.C. §§ 1182(a)(17) and 1251(a)(1), and therefore was entitled to the assistance of appointed counsel at the preliminary hearing held upon the district court's order. This issue was not before the district court; appellant's claim arises from events that occurred subsequent to that court's decision, and therefore is not properly before us. We note, however, that appellant was not charged with violation of a criminal statute, and therefore would not have standing to raise the Sixth Amendment issue in district court. Any challenge to a failure to appoint counsel, at the government's expense, to assist an alleged alien at a deportation proceeding may be instituted in district court after administrative remedies have been exhausted. In this regard, we would draw appellant's attention to this Court's opinion in *Chavez-Raya v. Immigration & Naturalization Service,* 519 F.2d at 401–402 (7th Cir.1975), suggesting that the right to appointed counsel in connection with a civil deportation proceeding is "particularly dubious."

Finally, appellant challenges, on due process and equal protection grounds, the constitutionality of 8 U.S.C. § 1252(h), which provides that an alien serving a sentence of imprisonment shall not be deported until he has been released from confinement. Appellant asserts that § 1252(a) and § 1252(h) are inconsistent in that although the Attorney General is required to proceed with reasonable dispatch under § 1252(a), § 1252(h) permits the Attorney General to defer a final decision on deportation until appellant is released from confinement; therefore, appellant argues, he must endure the discriminatory adverse effects of the detainer on his institutional status and rehabilitation program throughout the period of his confinement.

This claim was not presented to the district court, and therefore we do not address it except to note in passing that the cited statutes do not permit the Attorney General to defer a final determination on deportation merely because an alleged alien is confined and may not actually be deported

until released. His statutory duty is to proceed with "reasonable dispatch" to determine whether appellant is deportable. Whether the district court correctly determined that, on the particular circumstances of this case, the Attorney General was not so proceeding also is not an issue before us.

## V

In conclusion, we affirm the district court's holding that appellant is not entitled, under the Sixth Amendment, to a speedy deportation hearing; he therefore has no remedy under the Interstate Agreement on Detainers or the Speedy Trial Act.